**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WENDALL RENARD LINDSAY, | ) | CASE NO. 1:13-CV-00309 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| TERRY A. TIBBALS, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Wendall Renard Linsday ("Petitioner") for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio vs. Lindsay*, Case No. 2010-CR-0419 (Richland County

October 29, 2010).  (Doc. No. 7-5.)  For the reasons set forth below, it is recommended

that the petition be dismissed with prejudice.

## I.  Factual Background

The state appellate court reviewing Petitioner's direct appeal recited the following

relevant facts:

> On March 4, 2010, ten-year-old N.J. approached her
> guidance counselor at school and told her "my mother's
> boyfriend has been raping me." (T. 197). During the
> investigation into the sexual assault, N.J. disclosed that her
> mother's boyfriend, appellant, had come into the room that
> she shared with her younger sister on the morning of March
> 4th, pulled down her underwear and stuck his tongue in her
> vagina. (T. at 198; 269). This was not the first time a sexual

incident had occurred. All in all, N.J. told the social worker who interviewed her that the appellant had placed his mouth on her vagina approximately six times and penetrated her vagina with his penis a total of seven times. (T. at 271).

After the disclosures, N.J.'s father took her to the hospital for a sexual assault examination. The nurse who performed the exam found physical evidence consistent with N.J.'s allegations. As part of the examination, swabs were taken of the victim's vaginal area and the panties she was wearing at the time of the examination were collected. DNA collected from the panties and the vaginal area of N.J. was consistent with the appellant's DNA.

Appellant was indicted by the Richland County Grand Jury with 5 separate counts of rape, 5 separate counts of sexual battery, and 5 separate counts of gross sexual imposition.

Following the jury trial, appellant was convicted of one count of rape, one count of sexual battery and one count of gross sexual imposition. The jury returned verdicts of not guilty to the remaining charges.

A sentencing hearing was held on October 27, 2010. The trial court merged the offenses for sentencing purposes and sentenced appellant to a term of ten years to life.

*State v. Lindsay*, No. 2010-CA-0134, 2011 WL 4361632, at *1 (Ohio App. Ct. Sept. 19, 2011).

## II.  Relevant State Procedural Background

### A.  Direct Appeal

Petitioner timely appealed his conviction and sentence.  (Doc. No. 7-10.)  In his appellate brief, Petitioner asserted the following six assignments of error:

> I.  The trial court committed prejudicial error and deprived the defendant– appellant of his equal protection rights under the Fourteenth Amendment of the United States Constitution by upholding the peremptory challenges of the prosecutor against two black jurors.

2

II.     The trial court committed prejudicial error and
        deprived the defendant–appellant under his due
        process rights under the Fourteenth Amendment of
        the United States Constitution by denying
        defendant–appellant to change counsel during the
        trial and to have the judge recuse himself in violation
        of the defendant–appellant's Sixth Amendment right
        to counsel and the Fourteenth Amendment due
        process.

III.    The trial court erred in failure to continue the trial
        based upon the request of the defendant–appellant's
        attorney.

IV.     The defendant–appellant was denied his rights to due
        process under the United States Constitution and
        Ohio Constitution by receiving into evidence regarding
        domestic violence and adultery [sic] reportedly
        committed by the defendant–appellant.

V.      The trial court committed prejudicial error by failing to
        exclude out–of–court statements made by the alleged
        victim being introduced through the testimony of other
        witnesses, in violation of Evidence Rule 802 and the
        defendant–appellant's right is [sic] guaranteed to him
        by the Fifth, Sixth, and Fourteenth Amendment of the
        United States Constitution.

VI.     Defendant–appellant was deprived of effective
        assistance of counsel by the Sixth Amendment of the
        United States Constitution, Article I, Section 10 of the
        Ohio Constitution, as well as the due process
        protection under the Fourteenth Amendment of the
        United States Constitution, and Article I, Section 16 of
        the Ohio Constitution.

(Doc. No. 7-12.)  With respect to his final assignment of error, Petitioner contended that

his trial counsel's failure to object to the other errors asserted in his brief constituted

ineffective assistance of trial counsel.  (*Id.*)

In September 2011, the state appellate court affirmed Petitioner's conviction and

sentence.  *Lindsay*, 2011 WL 4361632 at *14.  Petitioner did not file a notice of appeal

3

to the Ohio Supreme Court.

**B.     Rule 26(B) Application**

In December 2011, Petitioner, *pro se*, filed an application to reopen his appeal

pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. No. 7-16.)  He

asserted that his appellate counsel was ineffective in failing to raise the following claims

on direct appeal:

> I.      The trial court committed prejudicial error by failing to
> exclude testimony as to the credibility and/or
> believability of the alleged victim's allegations against
> the defendant; ineffective assistance of trial counsel
> for not filing ineffective assistance of trial counsel who
> failed to object during the trial, to court and
> prosecution's misconduct allowing true DNA facts to
> be hidden from the expert witnesses when the
> outcome of the verdict relied on that information, and
> resulted in a verdict that was against the propound
> proponderance [*sic*]; based on insufficient evidence
> presented at trial.  Violating Rules of Evidence Rule
> 404(B),and 403, also violations of defendant's post-
> *Miranda* rights, and due process rights by not
> suppressing evidence before trial.

> II.     The trial court committed prejudicial error by failing to
> exclude from evidence prior allegations of sexual acts;
> also by failing to exclude opinion testimony as to the
> credibility and/or believability of the State witnesses.
> Ineffective assistance of the state witnesses.
> Ineffective assistance of appellate counsel for not
> filing ineffective assistance of trial counsel who
> neglected to object to the trial court when it allowed
> testimony from friends-of-the-court, prejudicing the
> defendant when this fact was obvious; also, resulting
> in a prejudice outcome in the trial, violating
> defendant's Sixth Amendment [Worley's] or
> confrontation, equal protection and due process of the
> law and not protecting against prosecutor misconduct.

> III.    The evidence of the five different groups of charges
> should have been separated due to the evidence of

4

> the charges could only confuse the jury, thus resulting in a confusing verdict baised [*sic*] on evidence not supporting the conviction; and resulted in a sentence outside the statutory guidelines and is void.

(*Id*.)

In January 2012, the state appellate court denied Petitioner's Rule 26(B) Application, concluding that he had failed to raise any genuine issue of material fact with respect to whether he had received ineffective assistance of appellate counsel.  (Doc. No. 7-18.)  Petitioner filed a timely notice of appeal to the Ohio Supreme Court, which, in May 2012, declined jurisdiction and dismissed Petitioner's appeal.  (Doc. Nos. 7-20, 7-23.)[1]

### III.   Proceedings in This Court

In February 2013, Petitioner filed his § 2254 petition in this Court, which contained six grounds for relief.  (Doc. No. 1.)  Thereafter, the State moved to dismiss some of Petitioner's claims on the basis that Petitioner had not exhausted them in state court.  (Doc. No. 6.)  In February 2014, the Court dismissed the fourth, fifth and sixth grounds for relief in the § 2254 petition.  (Doc. No. 16.)  The remaining grounds for relief, which are set forth in the Appendix attached to this Report and Recommendation, are the same as the claims that Petitioner raised in his Rule 26(B) Application pertaining to the ineffectiveness of his appellate counsel on direct appeal.  (Doc. No. 1.)  In

---

[1] In September 2012, Petitioner filed a motion for acquittal under Rule 29 of the Ohio Rules of Criminal Procedure (doc. no. 7-24), which the state trial court treated as a petition for post-conviction relief and denied as untimely and barred by *res judicata* in March 2013 (doc. no. 7-26).  In February 2013, Petitioner, *pro se*, filed a motion for a new trial (doc. no. 7-30), which the state trial court denied in January 2014 (doc. no. 18-4).  Neither of these filings is relevant to the habeas petition.

support of these remaining grounds for relief, Petitioner supplies lengthy statements of supporting facts.  (Doc. Nos. 1-1 (addressing the first ground for relief), 1-2 (addressing the second ground for relief), 1-3 (addressing the third ground for relief).)  Taken together, the Court construes Petitioner's grounds for relief and his descriptions of the facts in support to assert the following claims[2]:

I. The trial court erred in admitting: (1) testimony regarding the victim's statements to others when she disclosed the sexual abuse; (2) improper character/prior bad acts evidence; and (3) a civil protection order in an unrelated case.

II. Trial counsel was ineffective in failing to: (a) object to court and prosecutorial misconduct in allowing "true DNA facts" to be "hidden" from expert witnesses; (b) file suppression motions concerning the DNA evidence; and (c) object to testimony from "friends of the court."

III. The verdict was against the manifest weight of the evidence.

IV. The prosecutor committed misconduct by failing to provide discovery of the "true DNA facts."

V. The State should have conducted five separate trials, one for each incident of abuse alleged in the indictment.

The parties have now completed briefing in this case, and so this § 2254 petition is ready for decision.

---

[2] Petitioner is *pro se.*  Thus, this Court is required to "active[ly] interpret[]" his "petition 'to encompass any allegation stating federal relief.'" *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)).

## IV.  Procedural Issues

### A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Richland County, Ohio sentenced Petitioner.  (Doc. No. 7-5.) Richland County is within this Court's geographic jurisdiction.  See 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### B.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  See 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  See *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  See *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review  "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

7

When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* *501 U.S. 722, 750 (1991).*

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

As a general principle, this Court can dismiss a habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies.  *See* 28 U.S.C. § 2254(c); *Rose v. Lundy,* 455 U.S. 509 (1982).  However,  if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted

8

claim, this Court may deem the claim procedurally defaulted.  *See Gray v. Netherland,* 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Here, the State argues that the issues asserted in the petition are available for federal habeas review only to the extent that Petitioner asserts them in the context of ineffective assistance of appellate counsel.  This argument is well taken.[3]

Petitioner raised the vast majority of his habeas claims as bases for asserting ineffective assistance of appellate counsel in his state court Rule 26(B) Application.  He did not, however, raise the majority of his arguments as independent grounds for relief in his state court direct appeal and, thus, they are not exhausted.[4]  Further, although

---

[3]  The State also argues that, even to the extent that he raised his claims in the context of ineffective assistance of appellate counsel, Petitioner failed to exhaust his claims because Petitioner failed to alert the state courts to the federal constitutional nature of his claim because he relied only on Ohio law in his Rule 26(B) Application.  This argument lacks merit.  Petitioner's Rule 26(B) Application did not cite to any case law regarding ineffective assistance – federal or otherwise.  Accordingly, that application, alone, would be insufficient to alert the state courts to the federal dimensions of his claim.  However, in its decision, the state appellate court relied on the Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668 (1984).  (Doc. No. 7-18 at 2.)  The state appellate court's reliance on *Strickland* reflects not only that the court treated Petitioner's claims as asserting federal constitutional rights, but also that it considered the federal constitutional element of Petitioner's claims, and rejected it.  Accordingly, the State's contention that Petitioner failed to fairly present the claims raised in his remaining grounds for relief to the state courts is incorrect.

[4] Presentation of claims in the context of ineffective assistance of counsel is not sufficient to "fairly present" them as independent grounds to the state courts.  *See, e.g., Wagner v. Smith*, 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to exhaust a prosecutorial misconduct claim where he presented it to the state courts in the

Petitioner asserted several claims in his direct appeal that he now raises in his habeas petition (doc. no. 7-12), he did not file a notice of appeal to the state supreme court from the state appellate court decision affirming his conviction. Accordingly, Petitioner also failed to exhaust even those claims that he raised on direct appeal.

Further, Petitioner's claims are procedurally defaulted. *Res judicata* bars future state court review of any of the claims asserted in the habeas petition. *Hanna v. Ishee, 694 F.3d 595, 613-14 (6th Cir. 2012)* (" A claim is *res judicata* if (1) the petitioner could have brought the claim on direct appeal, but failed to do so; or (2) the claim was actually brought and decided on appeal.") (internal citation omitted).  Thus, a defendant may not raise a claim in a post-conviction proceedings that either could have have been or actually was  litigated at trial or on direct appeal. *Id.*  It is well established that *res judicata* is an independent and adequate state ground barring federal habeas relief. *Id. at 614*.  Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of these claims.  Even if this Court were to construe Petitioner's argument to assert that his appellate counsel's failure to raise these issues on direct appeal constitutes cause for his procedural default, such an argument would lack merit for the reasons set forth in Section V, *infra* (discussing ineffective assistance of appellate counsel).  Accordingly, to the extent Petitioner asserts the issues in his habeas petition as independent bases for relief, the issues are procedurally defaulted and precluded from habeas review.  This Court will construe the

---

context of ineffective assistance of counsel, noting that doing so "did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court") (emphasis in original)

petition to assert the issues therein in the context of ineffective assistance of counsel.[5]

## V.  Merits of Petitioner's Claims

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor,* 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

---

[5] This Court agrees with the State that it is difficult to identify Petitioner's arguments in support of his petition.  Petitioner's supporting facts are "largely a confusing amalgam of numerous, disjointed legal theories, subclaims, and alleged errors," which make it "terribly difficult to assess" Petitioner's claims.  (Doc. No. 17 at 13 .)

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of

federal law only if the deciding court correctly identifies the legal principle at issue and

unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S.

510, 520 (2003).  "In order for a federal court to find a state court's application of

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been

more than incorrect or erroneous.  The state court's application must have been

objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks

omitted).  This Court applies this deferential standard of review to the state courts'

rulings on Petitioner's  grounds for relief.

**B.    Ineffective Assistance of Appellate Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar

standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner

to demonstrate both that his counsel's performance was deficient, and that the allegedly

12

ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  The *Strickland* standard applies to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 286 (2000).

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard.  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted).  Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court.  *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000).  Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ____ U.S. ____, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, ____

U.S.____, 131 S. Ct. 1388, 1403 (2011) ("Our review of the [state court's] decision is thus doubly deferential.  We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

### 1.    Trial Court Evidentiary Rulings

The petition can be reasonably construed to assert that Petitioner's appellate counsel was ineffective in failing to challenge various evidentiary rulings by the state trial court, specifically, the admission of: (1) testimony regarding the victim's statements to others when she disclosed the sexual abuse; (2) improper character/prior bad acts evidence; and (3) a civil protection order in an unrelated case.  As a preliminary matter, the record does not support Petitioner's contention with respect to the first two evidentiary rulings, as Petitioner's appellate counsel raised these issues in his direct appeal brief (doc. no. 7-12), and the state appellate court considered these issues in affirming Petitioner's conviction and sentence, *see Lindsay*, 2011 WL 4361632 at **8-11.  The state appellate court noted as much in its decision denying Petitioner's Rule 26(B) Application.  (Doc. No. 7-18 at 4.)  Accordingly, any argument that Petitioner's appellate counsel was ineffective in failing to raise these arguments on direct appeal lacks a basis in fact.

The third evidentiary ruling arises out of the direct trial testimony of the victim's mother, who testified that she and Petitioner had an abusive relationship, and that, at some point, Petitioner had sent her threatening letters.  (Tr. at 235-36, Doc. No. 7-6.)  The prosecutor asked the victim's mother whether she had obtained a restraining order.  (*Id.* at 236.)  Petitioner's trial counsel requested a sidebar conference, and argued that

14

the mother's petition for a civil protection order/restraining order – which the prosecutor indicated he intended to introduce into evidence – was inadmissible hearsay. (*Id.* at 236-37.) The trial court concluded that the victim's mother could identify the documents related to the restraining order, but could not "read [the contents of the documents] to the jury, I'm not saying they come in." (*Id.* at 237.) Thereafter, the victim's mother identified the restraining order, and testified that, after she obtained it, Petitioner stopped sending threatening letters. (*Id.* at 237-38.) Neither the restraining order nor its contents was ever admitted into evidence or read to the jury. There is nothing in the trial court record reflecting that the trial court admitted the restraining order into evidence. Accordingly, any argument based on the admission of the restraining order would not have succeeded and, thus, Petitioner cannot demonstrate either that his appellate counsel's performance was deficient in failing to raise any such claim on direct appeal, or that Petitioner was prejudiced by the omission of this claim.

### 2. Ineffective Assistance of Trial Counsel

The petition can be reasonably construed to assert that Petitioner received ineffective assistance of appellate counsel when his appellate counsel failed to argue that his trial counsel was ineffective in failing to: (1) object to court and prosecutorial misconduct in allowing "true DNA facts" to be "hidden" from expert witnesses; (2) file suppression motions concerning the DNA evidence; and (3) object to testimony from "friends of the court."

### a. DNA Evidence and Expert Testimony

The first two bases for ineffective assistance of trial counsel arise out of the expert evidence presented at trial. One expert, Dawn Fryback, a Mansfield Police

Department DNA analyst, testified that she had performed analysis of the DNA evidence from swabs of the victim's pubic area and cuttings from the underwear worn by the victim on the day she reported the abuse to school authorities.  (Tr. 396-99, Doc. No. 7-7.)  Swabs from the victim's pubic area contained the DNA of both Petitioner and the victim, as *well* as a small amount of DNA from the victim's mother.  (*Id.* at 426-27.) Two of the three samples taken from the underwear contained the DNA of the victim, Petitioner, and the victim's mother.  (*Id.* at 441-45.)  One of the samples – taken from the front crotch area of the underwear – contained the DNA of only Petitioner and the victim.  (*Id.* at 441-43.)  Fryback testified that her analysis did not reveal *how* the DNA came to be present in the swabs and the samples.  (*Id.* at 451.)  A second expert, Ohio Bureau of Criminal Investigation forensic scientist Christine Hammett, testified that the swabs taken from the victim's pubic area contained amylase, a component of saliva. (*Id.* at 471-72, 474-75.)

At trial, Petitioner testified that, the night before the victim revealed the abuse to school officials, he performed cunnilingus on the victim's mother.  (Tr. at 551-52, Doc. No. 7-8.)  According to Petitioner, afterward, the victim's mother put on the underwear tested by the experts and, eventually, the victim wore the same pair of underwear to school the next day.  (*Id.* at 552-53.)

In his Rule 26(B) Application, Petitioner contended that the victim "washed away any real possibility [*sic*] DNA evidence, then urinated twice, and wiped away any chance for the prosecution to prove their case."  (Doc. No. 7-16 at Page ID#1004.)  He repeats that assertion in his petition, claiming that the prosecutor and investigators "withheld the fact that . . . the alleged victim had washed her private area before she

16

was examined [by] DNA examiners."  (Doc. no. 1-2 at 7.)   Although not clear, Petitioner's argument seems to be that his trial counsel either should have introduced evidence of the victim's personal hygiene activities or moved to suppress the experts' opinions regarding the DNA on the basis that the State did not tell the investigators that the victim had cleaned herself before the samples were obtained.

Such an argument would present no basis for concluding either that petitioner's trial counsel was deficient or that Petitioner was prejudiced as a result of trial counsel's failure to challenge the expert testimony or otherwise move to suppress DNA evidence in this case.  The expert testimony and scientific evidence merely established that Petitioner's DNA was present on the victim's body and in the underwear she was wearing, and that saliva was present in the victim's pubic area.  Neither expert testified regarding how the DNA and saliva came to be present.  Petitioner's argument, which focuses on how his DNA was present in the underwear and on the victim's body, does not contradict the testimony of the experts.  Accordingly, any claim of ineffective assistance of trial counsel based on this issue on direct appeal would not have succeeded.  Petitioner cannot demonstrate that his appellate counsel's omission of these arguments on direct appeal either constituted deficient performance, or caused Petitioner prejudice.

### b.   "Friends of the Court"

Petitioner argues that his appellate counsel was ineffective in failing to argue on direct appeal that Petitioner's trial counsel was ineffective in failing to object to the testimony of "friends of the court."  Although not clear, this argument appears to arise out of the fact that, during voir dire, the trial court realized that two of the State's listed

17

witnesses - the victim and her aunt, Richland County Sheriff's Deputy Pat Smith – were

the granddaughter and daughter, respectively, of the trial court judge's former bailiff,

Charlene Thomas. Immediately after the jury was empaneled, Petitioner raised this

issue as one basis for a *pro se* motion to disqualify the trial court judge and change the

venue of the trial. (Tr. 143, Doc. No. 7-6.) The trial court denied the *pro se* motions:

> I found out those things [during voir dire] as well. Charlene
> Thomas is apparently [the victim's] grandmother, she was
> my bailiff three bailiffs ago. I never had any connection with
> her outside the courtroom. It's just been a professional
> relationship. She's never been to my house, I've never been
> to her house. It has no influence on my judgment in your
> case. I have no stake in this case one way or the other
> except to see that you get a fair trial. That's what I've been
> trying to do all day today.

(Tr. 143-44.) The victim and Deputy Smith both testified at trial. (Tr. 166-194, Doc. No.

7-6; Tr. 317-40, Doc. No. 7-7.)

In its decision denying his Rule 26(B) Application, the state appellate court

rejected Petitioner's "friends of the court" argument on the basis that Petitioner had

already unsuccessfully raised this issue on direct appeal:

> In his direct appeal, this Court reviewed appellant's
> arguments concerning the trial judge and a prospective juror
> who was a former bailiff . . . Accordingly, we find that this
> issue is res judicata and further raise[s] no genuine issue as
> to whether [appellant] was deprived of the effective
> assistance of counsel on appeal.

(Doc. No. 7-18 at 4.) In his direct appeal, Petitioner argued that the trial court judge

erred in declining to recuse himself from Petitioner's case on the basis that the victim's

grandmother was a retired bailiff of the court. (Doc. No. 7-12.) The appellate court

rejected this argument, noting that Petitioner had not followed the appropriate procedure

18

for disqualifying a judge under Ohio law.  (Doc. No. 7-14 at 14.)  Although the state appellate court did not specifically address Petitioner's "friends of the court" issue in the context of ineffective assistance of trial counsel in its decision denying Petitioner's Rule 26(B) Application,  Petitioner's contention that his appellate counsel was ineffective in failing to raise this particular issue on direct appeal provides no basis for habeas relief. Even if this Court construes Petitioner's objection as an assertion that his trial counsel should have followed the state disqualification procedure, Petitioner has not demonstrated that his trial counsel's decision to forego the disqualification procedure was something other than the type of strategic decision that is given a "heavy measure of deference" by reviewing courts. *Strickland*, 466 U.S. at 691.  This is particularly true given that Petitioner points to nothing in the record reflecting that the trial court judge's professional relationship with his former bailiff prejudiced Petitioner or his defense in this case, such that any argument of ineffective assistance of trial counsel arising out of that relationship would have succeeded on direct appeal.  Accordingly, Petitioner cannot demonstrate that his appellate counsel's omission of this argument on direct appeal either constituted deficient performance, or caused Petitioner prejudice.

### 3.    Sufficiency of the Evidence/Manifest Weight

The petition can be construed to assert that Petitioner's appellate counsel ineffectively failed to argue that Petitioner's conviction was not supported by sufficient evidence.  Under Ohio law, a defendant's conviction may be reversed upon insufficient evidence only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the elements of the crime were proven beyond a reasonable doubt.  *State v. Goff*, 694 N.E.2d 916, 928, 82 Ohio

19

St.3d 123, 138 (Ohio 1998).  In its decision denying Petitioner's Rule 26(B) Application, the state appellate court desribed the evidence presented at Petitioner's trial and concluded that there was sufficient evidence to support his conviction. (Doc. No. 7-18 at 7.)

Petitioner was convicted of one count each of: (1) rape, in violation of Ohio Rev. Code § 2907.02(A)(1)(b), which prohibits "sexual conduct" with an individual under the age of 13; (2) sexual battery, in violation of Ohio Rev. Code § 2907.03(A)(5), which prohibits "sexual conduct" with an individual when the offender is the individual's parent, guardian, custodian or peron *in loco parentis* of the individual; and (3) gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4), which prohibits "sexual contact" with an individual who is under the age of 13.  Under Ohio law, "sexual conduct" is "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."  Ohio Rev. Code § 2907.01(A). "Sexual contact" is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  Ohio Rev. Code § 2907.01(B).

In support of his argument that there was insufficient evidence to convict him, Petitioner raises various issues, arguing that there was no evidence of penetration or saliva in or around the victim's vagina, and that the victim's testimony was "without sexual knowledge of any sort."  (Doc. No. 19 at 23.)  These arguments fail.  The victim

testified that Petitioner inserted his penis into her vagina, an act that satisfies the definition of "sexual conduct."  She also testified that the Petitioner licked her vaginal area, an act that satisfies the definition of "sexual contact."  Petitioner does not dispute that the victim was younger than 13 years old, or that he was her custodian. Accordingly, the victim's testimony alone was sufficient to support Petitioner's conviction in this case.  Any argument based on the sufficiency of the evidence in support of Petitioner's conviction would not have resulted in a different outcome on appeal, and Petitioner cannot show either that appellate counsel's decision to omit the argument constituted deficient performance, or that he was prejudiced by appellate counsel's omission of these issues on appeal.

The petition can also be reasonably construed to assert that Petitioner's appellate counsel ineffectively failed to argue that the conviction was against the manifest weight of the evidence.[6]  Specifically, Petitioner alleges that the prosecutor "led" the victim's testimony, and argues that the victim's testimony was "vague" and inconsistent with the physical evidence.  He also contends that the victim's aunt coached the victim in her testimony in order to "carry out a sinister plot in the frame-up of the petitioner."  (Doc. No. 19 at 13.)

Under Ohio law, an appellate court conducting a manifest-weight analysis "sits as a 'thirteenth juror' and may disagree with the fact finder's resolution of the conflicting

---

[6] Generally, a petitioner's independent claim that his conviction was against the manifest weight of the evidence is not cognizable on federal habeas review.  *Johnson v. Konteh*, 597 F. Supp. 2d 747, 754 (N.D. Ohio 2009) (citing *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993)).  In this case, however, Petitioner does not raise manifest weight as an independent claim, but, rather as a basis for alleging that he received ineffective assistance of counsel.

testimony." *State v. Jackson*, 863 N.E.2d 223, 226, 169 Ohio App.3d 440, 444 (Ohio App. Ct. 2006) (citing *State . Thompkins*, 678 N.e.2d 541, 78 Ohio St.3d 380 (Ohio 1997)). The appellate court "'reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.*'" *Thompkins*, 678 N.E.2d at 547, 78 Ohio St.3d at 387 (quoting *State v. Martin*, 485 N.E.2d 717, 720-21, 20 Ohio App.3d 172, 175 (Ohio App. Ct. 1983)) (emphasis added).

In this case, in denying his Rule 26(B) application, the state appellate court rejected Petitioner's argument that his conviction was against the manifest weight of the evidence. The appellate court noted that, the victim, who was ten years old, was competent to testify, and that she had testified that Petitioner "licked her vaginal area on the morning of March 4, 2010 before she went to school and reported the abuse." (Doc. No. 7-18 at 4.) The court noted that "additional evidence in the form of expert testimony and DNA evidence was presented." (Doc. No. 7-18 at 7.) The record reflects that the state appellate court's description of the evidence is accurate. Petitioner does not identify the evidence at trial that outweighed the testimony of the victim and the scientific evidence presented by the State. Accordingly, the record does not support the conclusion that, had Petitioner's counsel raised a manifest weight argument on direct appeal, the outcome of Petitioner's appeal would have been different. Thus, Petitioner cannot show that either that his appellate counsel's performance was deficient, or that

he was prejudiced by his appellate counsel's decision to omit this argument.

### 4.    "True DNA Facts"

The petition can be reasonably construed to assert that Petitioner's appellate counsel was ineffective in failing to argue on direct appeal that the State improperly withheld exculpatory evidence – "true DNA facts" – from the defense.  Petitioner does not, however, identify precisely what facts were withheld.  Nor does he explain the significance of the omitted information.  Nothing in the record suggests that the State withheld any information regarding the DNA evidence, and the trial transcript reflects not only that Petitioner's counsel cross-examined the State's scientific experts, but also that Petitioner testified regarding his theory of how his DNA came to be present in the victim's underwear.  Petitioner does not explain, and the record does not reflect, how any claim on direct appeal that the State withheld evidence would have succeeded.  Accordingly, his argument is speculative and he cannot demonstrate that either that his appellate counsel's performance was deficient, or that he was prejudiced by his appellate counsel's decision to omit any such argument.

### 5.    Joinder

Finally, the petition can be construed to assert that Petitioner's appellate counsel was ineffective in failing to argue on direct appeal that the State impermissibly joined all of the charges in a single indictment.  Rule 8(A) of Ohio's Rules of Criminal Procedure governs joinder of offenses:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on

23

> two or more acts or transactions connected together or
> constituting parts of a common scheme or plan, or are part
> of a course of criminal conduct.

Ohio law "favors joinder because a single trial will conserve time and expense and may minimize potentially disparate outcomes that can result from successive trials before different juries." *State v. Kaufman*, 931 N.E.2d 143, 174, 187 Ohio App.3d 50, 90 (Ohio App. Ct. 2010).  However, "[s]everance may be warranted if the trial court finds a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence." 931 N.E.2d at 143, 187 Ohio App.3d at 91.  Ohio appellate courts review trial court decisions regarding joinder for abuse of discretion, with the defendant bearing the burden of affirmatively proving that his rights were prejudiced by the joinder of offenses.  *State v. Clifford*, 733 N.E.2d 621, 624, 135 Ohio App.3d 207, 211 (Ohio App. Ct. 1999).

In its decision denying Petitioner's Rule 26(B) Application, the state appellate court concluded that Petitioner could not demonstrate that he was prejudiced by the joinder of the offenses, noting that the jury had acquitted Petitioner of 12 of the 15 counts in the Indictment, all arising out of the same date.  (Doc. No. 7-18 at 6-7.)  Here, Petitioner argues that the joinder of all of the offenses caused the jury to lose its way and convict him of some offenses and acquit him of others relying on the same evidence.  This conclusory argument, however, is not sufficient to demonstrate that the trial court abused its discretion in this case.  Rather, as the appellate court observed in its decision denying Petitioner's Rule 26(B) Application, the jury's  verdict – acquitting Petitioner of 12 of the 15 counts and convicting him on counts arising out of a single incident of abuse – "demonstrated that the jury was able to separate its analysis of the

24

individual charges and impartially decide each count." (Doc. No. 7-18 at 7.)

Accordingly, any argument on appeal arising out of the joinder of all 15 offenses would not have succeeded, and Petitioner cannot demonstrate that either that his appellate counsel's performance was deficient, or that he was prejudiced by his appellate counsel's decision to omit any such argument.

### V. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: July 14, 2014                          /s/ Nancy A. Vecchiarelli
                                             United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

**Appendix**

The first, second and third grounds for relief in Petitioner's § 2254 petition are as

follows:

I.      The trial court committed prejudicial error by failing to exclude testimony as to the credibility and/or believability of the alleged victim's allegations against the defendant; ineffective assistance of trial counsel for not filing ineffectiveness assistance of trial counsel who failed to object during the trial, to court and prosecution's misconduct allowing true DNA facts to be hidden from the expert witnesses when the outcome of the verdict relied on that information, and resulted in a verdict that was against the propound proponderance [*sic*]; based on insufficient evidence presented at trial.  Violating Rules of Evidence Rule 404(B),and 403, also violations of defendant's post-*Miranda* rights, and due process rights by not suppressing evidence before trial.

II.     The trial court committed prejudicial error by failing to exclude from evidence prior allegations of sexual acts; also by failing to exclude opinion testimony as to the credibility and/or believability of the State witnesses.  Ineffective assistance of the state witnesses.  Ineffective assistance of appellate counsel for not filing ineffective assistance of trial counsel who neglected to object to the trial court when it allowed testimony from friends-of-the-court, prejudicing the defendant when this fact was obvious; also, resulting in a prejudice outcome in the trial, violating defendant's Sixth Amendment [Worley's] or confrontation, equal protection and due process of the law and not protecting against prosecutor misconduct.

III.    The evidence of the five different groups of charges should have been separated due to the evidence of the charges could only confuse the jury, thus resulting in a confusing verdict baised [*sic*] on evidence not supporting the conviction; and resulted in a sentence outside the statutory guidelines and is void.

(Doc. No. 1.)

26